# SUPERIOR COURT.

## TERRITORY OF NEW-ORLEANS, JULY, 1810.

### In the matter of *Pierre Dormenon.*

For the law upon this subject, see vol. 1. p. 330. 515.

Present—Honourable *Joshua Lewis.*

The court having considered this case, delivered their opinion this day in writing, in the following words, viz:

In the month of June, 1809, on the motion of Mr Derbigny, founded upon the affidavit of Mr. Guiet, the following rule was obtained against Pierre Dormenon, to wit:

"It is ordered that Pierre Dormenon show cause, on the first Monday in August next, before the superior court, to be holden at the City Hall at the city of New-Orleans, why his name as attorney and counsellor at law should not be striken off the rolls of said court, for having (as it is alleged upon oath) headed, aided, and assisted the negroes of St. Domingo in their horrible massacres and other outrages against the whites in and about the year 1793."

At which day the said Pierre Dormenon appeared and denied the charge.

Whereupon a number of witnesses were called, and their examination taken in writing in open court; and the said Dormenon requesting time to procure exculpatory testimony, he was allowed until the 1st day of January following,

Shortly after which day he appeared and submitted his proof and defence.

The examination in support of the charge set forth in the rule was lengthy, and is placed upon the files of the court. The witnesses appeared to be men of veracity—the credit of none has been impeached. It does not appear that either of them has had the least personal animosity towards Mr. Dormenon, or that they were actuated by motives of revenge or prosecution, or felt any other sentiment than that which the recollection of their past sufferings, in the presence of the person whom they considered to be the principal author of them, was calculated to inspire. And their testimony, if true, fully substantiates the fact charged in the rule.

To repeal the force of this testimony, Mr. Dormenon has produced testimonial proof, (which is not denied,) that in the various public employments in which the witnesses have known him, his conduct has been without reproach, and in his private life exemplary and much esteemed ; and, as an additional evidence of his having enjoyed public confidence, he has exhibited a list of appointments in the judiciary made by General Rochambeau, in the year in which his name appears.

This may be all true, but as it relates to an epoch some considerable time subsequent to the year 1793, does not contradict the witnesses, who speak of his conduct only in that year.

Mr. Dormenon, in his defence in writing, has laboured totally to discredit the witnesses against him, by attempting to show gross contradictions and absurdities in their testimony. If there be not a perfect coincidence in the witnesses in all the details of their testimony, they certainly agreed upon the important fact.

N.ORLEA'S,
July, 1810.

In the matter
of
Dormeuon.

It is proved that Mr. Dormenon was a municipal officer under the commissaries Poiverell and Santhonax, in the year 1793, when the general freedom of the slaves was proclaimed. This Mr. Dormenon admits.

It is proven, also, that in that character, wearing a scarf his badge of office, he marched at the head of the brigands acting in concert with their leaders, whose sole purpose and employment was the indiscriminate murder and massacre of the whites who refused to conform to the orders of the commissaries; and that their conduct in various expeditions in pursuit of the whites was marked with unexampled cruelty and barbarity. It is equally in testimony, that Dormenon associated with, and was the intimate friend of De Lisle, Brisot, Faubert, and Gai, who headed the brigands in the quarter of Jacmel and Jeremy and its dependencies

There are many circumstances detailed by the witnesses which warrant a belief of these facts. In fact, they are as satisfactorily proven as that Dormenon was a municipal officer, and can with as little plausibility be denied.

Had the same evidence of these facts accompanied Mr. Dormenon's application for admission to the bar, I have no doubt he would have been refused. The court now being possessed of it, it is equally their duty to exclude him. I is considered that the safety of this country requires that no person who has acted in concert with the negroes and mulatoes of St. Domingo in destroying the whites, ough to hold any kind of office here, however fair his conduct may since have been.

And, from the evidence, no unprejudiced mind can doubt that such has been the conduct of Mr. Dormenon. It is therefore, ordered that the rule be made absolute.